ALSD Local 91 (Rev. 5/18)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Southern District of Alabama

| United States of America | ) |
| --- | --- |
| v. | ) |
| | ) Case No. MJ 21-0180-B |
| Ruben Otoniel Morales, Jesus Valasco, and Osbaldo Antonio Velasco | ) |
| | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __November 18, 2021__ in the county of __Mobile__ in the __Southern__ District of __Alabama__, the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. § 1028(a)(3) | Possession with intent to use or transfer five or more documents or authentication features |

This criminal complaint is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature
Michael Maxey, US Postal Inspector

Michael Maxey, Postal Inspector
*Printed name and title*

Sworn to before me and attestation acknowledged pursuant to Fed. R. Crim. P. 4.1.

Date: November 19, 2021

_____
Judge's signature

City and state: Mobile, Alabama

Sonja F. Bivins
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Michael Maxey, being first duly sworn, hereby depose and state as follows:

I am a Postal Inspector with the U.S. Postal Inspection Service ("USPIS"), and have been so employed since August 2018. During my more than four years with USPIS, I have worked on many investigations involving theft of mail, various postal crimes, and fraud offenses, among other crimes. Before becoming a Postal Inspector, I attended a three-month Postal Inspector Basic Training course in Potomac, Maryland, during which I received training on criminal investigative techniques and practices. Additionally, before joining USPIS, I worked for more than seven years as a police officer with the Mobile, Alabama Police Department ("MPD"). During that time, I spent more than three years as a detective in MPD's Financial Crimes Unit. I was also a federally deputized task force officer for the U.S. Secret Service ("USSS"), where I investigated both federal and state fraud-related crimes. My duties as a Postal Inspector include investigating suspected mail theft (18 U.S.C. § 1708); mail fraud (18 U.S.C. § 1341); wire fraud (18 U.S.C. § 1343); conspiracy offenses (18 U.S.C. §§ 371 and 1349); identity theft offenses (18 U.S.C. § 1028); and aggravated identity theft (18 U.S.C. § 1028A), among other crimes.

The facts in this affidavit come from my personal observations, training, and experience, as well as information obtained from other agents, law enforcement officers, and witnesses. I submit my affidavit for the limited purpose of securing a criminal complaint. Thus, I have not included each fact obtained during the investigation or my knowledge of all matters in my investigation, which is ongoing. My affidavit is only intended to establish probable cause that **Ruben Otoniel Morales ("Morales"), Jesus Valasco ("Valasco"), and Osbaldo Antonio Velasco ("Velasco")** have violated federal statutes, including but not limited to 18 U.S.C. § 1028(a)(3) (possession with intent to use or transfer five or more documents or authentication

1

features), in the Southern District of Alabama and elsewhere. All dates, locations, and amounts listed in my affidavit are approximations.

On November 18, 2021, I was notified of a traffic stop conducted by Mobile County Sheriff's Office ("MCSO") Deputy Joseph Walker ("Walker"). Walker had stopped a GMC Yukon, bearing Texas license plate number NBB5063, that had been traveling eastbound on Interstate 10 near the McDonald Road exit in Mobile County, Alabama. Walker had observed the Yukon driving erratically—*i.e.*, swerving and crossing over the lane markers. After watching the Yukon cross the yellow "fog line" on the highway four times, Walker stopped the Yukon for failing to maintain its lane. Earlier in the day, MCSO had also received notification from U.S. Border Patrol to be on the lookout for a vehicle entering their area of responsibility; specifically, Department of Homeland Security databases showed that subjects linked to the registered address of the Yukon had been involved in criminal activity.

When Walker approached the passenger side of the Yukon, he smelled a strong fruity odor that he believed was caused by the three occupants of the vehicle having used a masking spray to attempt to cover up the smell of marijuana. Walker also noticed a strong odor of marijuana coming from the Yukon and could see a plastic spray bottle labeled "blunt spray" sitting in plain view in the cupholder of the vehicle's center console.

Walker addressed the reason for the stop and asked the driver, later identified as **Morales**, to provide his driver's license and proof of insurance for the Yukon. **Morales** said he only had an ID card from his country and gave Walker an El Salvadorian ID card that falsely identified himself as "Julian Valladares Fuentes." While speaking with **Morales**, Walker noticed that **Morales** was taking shallow, rapid breaths and smiling in a timid and nervous manner while speaking. **Morales** told Walker that he and the other occupants of the Yukon were traveling from Houston, Texas to

2

Tallahassee, Florida, for two weeks to do construction work. The front passenger, later identified as **Valasco**, was also breathing heavily and staring straight forward, avoiding eye contact with Walker. When Walker asked **Valasco** for his identification, **Valasco** gave Walker an El Salvadorian ID card that falsely identified himself as "Jesus Ochoa Lopez."

Due to the unusual circumstances of the stop, Walker returned to his patrol vehicle and requested backup units. While running records checks using the ID cards provided by **Morales** and **Valasco**, other MCSO deputies arrived on-scene. Corporal Aubrey Bishop ("Bishop") approached the passenger side of the Yukon to speak with **Morales** and detected the odor of marijuana emanating from the vehicle. Bishop asked **Morales** to step out of the Yukon, after which **Morales** said that his girlfriend and **Valasco** smoked marijuana, which may be why the vehicle smelled of marijuana. When asked whether there was any marijuana in the Yukon, **Morales** said, "not in any of my stuff."

Walker returned to the passenger side of the Yukon and asked **Valasco** to step out. At that time, Walker noticed a third passenger, later identified as **Velasco**, sitting in the backseat. Walker asked **Velasco** to step out of the Yukon and provide his identification. Like the other occupants of the Yukon, **Velasco** gave Walker an El Salvadorian ID card that falsely identified himself as "Alberto Lopez Cruz." Walker asked **Velasco** if there was any marijuana in the Yukon, and he replied that there was not.

Walker then conducted a probable-cause search of the Yukon. During the search, Walker found suspected marijuana, suspected Xanax pills, and other yet-to-be-identified white powdery substances that law enforcement has submitted for toxicology testing. Additionally, deputies detected a strong odor of marijuana emanating from the area of two Pringles potato chip cans in

the Yukon. Deputies inspected the Pringles cans further and saw that one of them contained pre-rolled marijuana cigarettes while the other contained numerous forged identification cards.

Specifically, eight (8) of the forged identifications used **Morales's** picture with a different name listed on each identification; seven (7) of the forged identifications used **Valasco's** picture with a different name listed on each identification; and nine (9) of the forged identifications used **Velasco's** picture with a different name listed on each identification. The identifications purported to be a mixture of consular identification cards (from various countries), permanent resident cards, and employment authorization cards. A photograph depicting certain of the forged identifications appears below:



Inside the center console of the Yukon, deputies also located 51 forged payroll-style checks made out to various individuals totaling $39,367.56. Further inspection of the forged checks revealed that the names of many of the payees listed on the checks corresponded to the names of the aliases for **Morales, Valasco,** and **Velasco** that were listed on the forged identifications deputies found in the Pringles cans. Specifically, nine (9) checks (totaling $6,970.69) had been made payable to **Morales's** aliases; 11 checks (totaling $8,510.45) had been made payable to **Valasco's** aliases; and 11 checks (totaling $15,364.47) had been made payable to **Velasco's** aliases. A redacted photograph depicting certain of the forged checks appears below:



Upon discovery of the suspected narcotics, forged identifications, and forged checks, deputies detained **Morales**, **Valasco**, and **Velasco** and transported them, as well as the Yukon, to an MCSO substation for further investigation. Research regarding the forged checks revealed that the Capital City Bank account on which they were drawn belonged to a business located in Quincy, Florida. The business's payroll manager confirmed that the account number (ending in 6201) and routing number on the forged checks belonged to the business's Capital City Bank business account. The payroll manager further informed investigators that **Morales**, **Valasco**, and **Velasco** did not work for the business and were not authorized to possess the forged checks, which were not legitimate checks from the business.

Along with Postal Inspector Douglas Wilson and USSS Special Agent Joshua Adams, I responded to the MCSO substation to attempt to interview **Morales**, **Valasco**, and **Velasco**. I *Mirandized* **Valasco** and **Velasco** in audio-recorded interviews, and both requested legal representation prior to answering any questions. I immediately terminated those interviews.

I also conducted an audio-recorded interview of **Morales**, who agreed to speak with federal agents after being read his *Miranda* rights and signing a USPIS *Miranda* warning and waiver form. During the interview, **Morales** admitted that he had received two envelopes—one containing the forged identification cards and one containing the forged checks—from an individual he knew as "Jose Luna." **Morales** admitted that he, **Valasco**, and **Velasco** had met with Luna at an Exxon service station in the Houston area at 1:30 am on the same day of the traffic stop, November 18, 2021. **Morales** acknowledged that he was going to cash the forged checks and keep a portion of the illegal proceeds while returning the remaining funds to Luna.

**Morales** claimed that Luna had told the trio to meet him in Tallahassee, where he would contact them with further instructions. Additionally, **Morales** said that the trio were headed to

6

Tallahassee to engage in construction work. Through further investigation and consultation with U.S. Customs and Border Patrol, I learned the true identities of **Morales, Valasco,** and **Velasco,** and that the trio had previously lied about their identities.

In conclusion, I believe probable cause exists that **Morales, Valasco,** and **Velasco** violated 18 U.S.C. § 1028(a)(3) and other federal statutes in the Southern District of Alabama and elsewhere.

Dated November 19, 2021.

*Michael Maxey US Postal Inspector*
Michael Maxey
Postal Inspector
U.S. Postal Inspection Service

THE ABOVE AGENT HAS ATTESTED
TO THIS AFFIDAVIT PURSUANT TO
FED. R. CRIM. P. 4.1(b)(2)(B) THIS 19th
DAY OF NOVEMBER 2021.

SONJA F. BIVINS
UNITED STATES MAGISTRATE JUDGE

7